```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CAROL KNIGHT-HURNEY and WALTER HURNEY,

                        Plaintiffs,
                                            MEMORANDUM & ORDER
            -against-                       14-CV-1092(JS)(AKT)

SUFFOLK COUNTY NATIONAL BANK,

                        Defendant.
----------------------------------------X
APPEARANCES
For Plaintiffs:     Matthew J. Barnes, Esq.
                    Barnes & Barnes, P.C.
                    445 Broadhollow Road, Suite 229
                    Melville, NY 11747

For Defendant:      Marianne McCarthy
                    Cullen and Dykman Bleakley Platt, LLP
                    100 Quentin Roosevelt Boulevard
                    Garden City, NY 11530
```

SEYBERT, District Judge:

Plaintiffs Carol Knight-Hurney ("Mrs. Knight-Hurney") and Walter Hurney ("Mr. Hurney," and together with Mrs. Knight-Hurney, "Plaintiffs") originally commenced this action in New York State Supreme Court against Defendant Suffolk County National Bank ("SCNB"), asserting violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., and state law claims of rescission based upon economic duress, unjust enrichment, and deceptive trade practices in violation Section 349 of the New York General Business Law. On February 20, 2014, SCNB removed the action to this Court.

Currently pending before the Court are: (1) Plaintiffs' motion to remand the state law claims to state court and to hold in abeyance the TILA claim pending resolution of the state law claims (Docket Entry 3); and (2) SCNB's motion to dismiss Plaintiffs' claims under TILA and the New York General Business Law for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket Entry 9). For the following reasons, SCNB's motion to dismiss is GRANTED insofar as it seeks dismissal of Plaintiffs' TILA claim and the state law claims are REMANDED to the Supreme Court.

BACKGROUND

I. Factual Background[1]

Plaintiffs are husband and wife. (Compl. ¶ 3.) Mrs. Knight-Hurney is the fee owner of real property located at 60 Old Homestead Road in Port Jefferson, New York, where she resides with Mr. Hurney. (Compl. ¶¶ 8-9.) Mr. Hurney is the sole officer and shareholder of Walter Hurney Realty, Inc. ("WHRI") and also is a member of Mt. Sinai LLC ("Mt. Sinai"). (Compl. ¶¶ 10-11.) WHRI and Mt. Sinai are companies engaged in the ownership and management of commercial real estate properties. (Compl. ¶ 12.) SCNB is a banking corporation

---

[1] The following facts are taken from the Complaint and are presumed to be true for the purposes of this Memorandum and Order.

organized under the laws of New York with a principal place of business in Riverhead, New York. (Compl. ¶ 4.)

In 2004, WHRI obtained an unsecured commercial line of credit from SCNB (the "2004 Line of Credit"). (Compl. ¶ 13.) In May 2009, Plaintiff advised SCNB that WHRI could no longer repay the principal amount on the 2004 Line of Credit due to the failing real estate market and resulting financial difficulties. (Compl. ¶¶ 15-16.) Plaintiffs claim that SCNB "insisted" that Mr. Hurney not default on the 2004 Line of Credit and promised that it would make additional extensions of credit to defer WHRI's repayment terms as a "temporary fix." (Compl. ¶¶ 18-19.) Plaintiffs further claim that that SCNB "promised . . . that it would forgive the balances accrued" on these additional extensions of credit. (Compl. ¶ 20.)

SCNB "routinely instructed [Mr. Hurney] to make written 'request[s] for extensions' on behalf of WHRI so that SCNB could process the loan extensions and thereby defer any default by WHRI." (Compl. ¶ 21.) As a result, by August 2009, WHRI owed SCNB over $470,000 in additional commercial loans. (Compl. ¶ 22.) However, Plaintiffs claim that due to an SEC investigation into these types of lending practices, SCNB then "rebuked its prior practices and began threating plaintiffs regarding the WHRI commercial credit lines" and additional loans Mt. Sinai had obtained from SCNB between 1998 and 2005. (Compl.

3

¶ 24.) On August 12, 2009, notwithstanding the fact that the loans were not in default, SCNB allegedly threatened to "call" the WHRI and Mt. Sinai loans and place a lien on Mrs. Knight-Hurney's home unless Plaintiffs granted SCNB a security interest in Mrs. Knight-Hurney's home. (Compl. ¶ 25.)

Plaintiffs claim that, given their tenuous financial situation, they had no choice other than to grant SCNB the security interest in Mrs. Knight-Hurney's home. (Compl. ¶¶ 30-33.) On August 12, 2009, Mr. Hurney and Mrs. Knight-Hurney each signed a Commercial Security Agreement "which purported to grant a security interest in [Mrs. Knight-Hurney's] personal residence to secure the commercial lines owed by WHRI" (the "2009 Commercial Security Agreement"). (Copml. ¶ 33.) Plaintiffs allege that they did not have an opportunity to review the 2009 Commercial Security Agreement and that SCNB failed to disclose required lending disclosures. (Compl. ¶¶ 34-35.) In conjunction with the 2009 Commercial Security Agreement, WHRI entered into a separate promissory note to pay SCNB the sum of $478,950, which "required interest-only payments of approximately $3,200 per month" (the "August 2009 Note"). (Compl. ¶¶ 37-38.)

In November 2011, WHRI and Plaintiffs advised SCNB that they "were having difficulty" paying the August 2009 Note. (Compl. ¶ 39.) In response, SCNB, allegedly in effort "to cover

4

up its prior malfeasance," "insisted" that Plaintiffs refinance and consolidate Plaintiff's original home debt (a mortgage of approximately $160,000) with the WRHI debt secured by the residence ($480,000) for a combined lien of $640,000. (Compl. ¶ 40.) Plaintiffs' loan application was initially denied because of an excessive debt-to-income ratio but SCNB eventually approved the loan in July 2012. (Compl. ¶¶ 42-48.) On November 26, 2012, Plaintiffs executed a thirty-year promissory note for $640,000, secured by a single-lien mortgage on Mrs. Knight-Hurney's home (the "November 2012 Refinance Transaction"). (Compl. ¶ 49.)

The Complaint asserts four causes of action based on the foregoing allegations. In the first cause of action, Plaintiffs allege that SCNB violated TILA in connection with the November 2012 Refinance Transaction because it failed to make certain required disclosures regarding the loan and also failed to make a reasonable and good faith determination as to whether Plaintiffs could repay the loan. (Compl. ¶¶ 52-58.) Plaintiffs seek rescission of the refinanced and consolidated loan pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23 and also ask the Court to "void[ ] the security interest" in Mrs. Knight-Hurney's home. (Compl ¶¶ 55-57.) The three remaining counts assert New York state law claims seeking redress for SCNB's conduct in

connection with the 2009 Commercial Security Agreement. (Compl. ¶¶ 59-76.)

II. Procedural Background

Plaintiff originally commenced this action in New York State Supreme Court, Suffolk County, on November 22, 2012. On February 20, 2014, SCNB removed the action to this Court based on federal question jurisdiction pursuant to 28 U.S.C. § 1441(a). (Docket Entry 1.) On February 28, 2014, Plaintiffs moved to sever and remand the state law claims to state court and to hold in abeyance the TILA claim pending resolution of the state law claims. (Docket Entry 3.) On March 28, 2014, SCNB moved to dismiss Plaintiffs' claims under TILA and the New York General Business Law for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 9.) These motions are currently pending before the Court.

## DISCUSSION

As noted, there are two motions currently pending before the Court--Plaintiffs' motion to remand their state law claims and SCNB's motion to dismiss Plaintiff's claims under TILA and the New York General Business Law. The parties do not dispute the order in which these motions should be addressed. As a general rule, "when an action is removed from state court, the district court first must determine whether it has subject matter jurisdiction over the claims before considering the

merits of a motion to dismiss . . . ." Macro v. Independent Health Ass'n, Inc., 180 F. Supp. 2d 427, 431 (W.D.N.Y. 2001). Here, there is no dispute that the Court has federal question jurisdiction over Plaintiff's TILA claim, and Plaintiffs seek only to remand the state law claims, arguing that the Court lacks supplemental jurisdiction over them. Since the Court has jurisdiction to decided SCNB's motion to dismiss insofar as it seeks dismissal of the TILA claim and since supplemental jurisdiction of the state law claims depends in part on whether a viable federal claims exists in this action, see One Commc'ns Corp. v. J.P. Morgan SBIC LLC, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims."), the Court will first address SCNB's motion to dismiss the TILA claim.

As discussed below, Plaintiffs' TILA claim fails as a matter of law and the Court declines to exercise supplemental jurisdiction over the remaining state law claims and remands them to the Supreme Court.

I. TILA Claim

The Court will first set forth the applicable legal standard for a motion to dismiss before turning to SCNB's motion specifically.

A. Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); accord Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

B. SCNB's Motion to Dismiss

As noted, Plaintiffs allege that SCNB violated TILA in connection with the November 2012 Refinance Transaction because it failed to make certain required disclosures regarding the refinanced and consolidated loan and also failed to make a reasonable and good faith determination as to whether Plaintiffs

could repay the loan. (Compl. ¶¶ 52-58.) Plaintiffs seek rescission of the loan pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23 and also ask the Court to "void[ ] the security interest" in Mrs. Knight-Hurney's home. (Compl ¶¶ 55-57.)

SCNB argues that Plaintiff's TILA claim should be dismissed on three grounds. First, SCNB argues that TILA does not apply to the November 2012 Refinance Transaction because that transaction "was primarily for business purposes," making it exempt from TILA's coverage. (Def.'s Br. to Dismiss & in Opp. to Pl.'s Mot. to Remand ("Def.'s Br."), Docket Entry 10, at 4-5.) Second, SCNB argues that the TILA claim must be dismissed because Plaintiffs "have not pleaded their ability to tender back the original loan principal." (Def.'s Br. at 6-7.) Finally, SCNB argues that TILA's right of rescission does not apply to the November 2012 Refinance Transaction because under Section 1635(e)(2) of TILA and 12 C.F.R. § 226.23(f)(2), the right of rescission does not apply to the refinancing or consolidation of a mortgage loan. (Def.'s Reply Br., Docket Entry 14, at 4-6.) As discussed below, the TILA claim must be dismissed because TILA's right of rescission does not apply to the November 2012 Refinance Transaction as a matter of law. Since the Court dismisses the TILA claim on this ground, it will not address SCNB's additional grounds for dismissal.

9

The main purpose of TILA is "to assure meaningful disclosure of credit terms, avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." McAnaney v. Astoria Fin. Corp., 357 F. Supp. 2d 578, 583 (E.D.N.Y. 2005) (citations omitted). Of relevance here, under Section 1635 of TILA, "consumers entering certain credit transactions involving security interests in their principal dwelling have a right to rescind the transaction until midnight on the third business day after the credit transaction, delivery of the rescission notice, or delivery of all material disclosures, whichever is latest." Barberan v. Nationpoint, 706 F. Supp. 2d 408, 421 (S.D.N.Y. 2010) (citing 15 U.S.C. § 1635). "If a borrower does not receive certain disclosures, the right to rescind the transaction extends for three years." Kahraman v. Countrywide Home Loans, Inc., 886 F. Supp. 2d 114, 118 (E.D.N.Y. 2012) (citing Barberan, 706 F. Supp. 2d at 421-22; 15 U.S.C. § 1635(f); and 12 C.F.R. § 226.23(a)(3)).

However, Section 1635 of TILA and the regulations promulgated by the Federal Reserve Board under Section 1635 partially exempt refinancing and consolidation transactions from the right of rescission. Specifically, Section 1635(e)(2) exempts:

10

> a transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property.

15 U.S.C. § 1635(e)(2). Similarly, the regulations state:

> (f) Exempt transaction. The right to rescind does not apply to the following:
>
> (2) A refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling. The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amount attributed solely to the costs of refinancing or consolidation.

12 C.F.R. § 226.23(f).

These provisions apply directly to this case. There is no dispute that the August 2012 Refinance Transaction simply consolidated, for a combined lien of $640,000, Mrs. Knight-Hurney's original home debt (a mortgage of $160,000) with the WRHI debt ($480,000), which was already secured by the residence pursuant to the 2009 Commercial Security Agreement. (Compl. ¶ 40.) Plaintiffs admit that "there were no loan proceeds advanced" by SCNB in either the November 2012 Refinance Transaction or the 2009 Commercial Security Agreement. (Pl.'s

11

Br. in Opp. to Mot. to Dismiss & in Supp. of Mot. to Remand, Docket Entry 12, at 8.) Thus, pursuant to Section 1635(e)(2) of TILA and 12 C.F.R. § 226.23(f), TILA's right of rescission does not apply to the 2012 November Refinance Transaction. See Kahraman, 886 F. Supp. 2d at 119 ("Section 226.23(f)(2) clearly governs plaintiffs' rescission rights under TILA, and plaintiffs have presented no legal argument why they are otherwise entitled to rescission of their entire loan, or to a complete release of [defendant's] security interest, which predated their refinancing.").

Accordingly, SCNB's motion to dismiss Plaintiffs' TILA claim is GRANTED and this claim is DISMISSED WITH PREJUDICE.

II. State Law Claims

Since the Court has dismissed Plaintiffs' TILA claim, there is no longer a basis for federal jurisdiction over Plaintiffs' state law claims. Ordinarily, "'[w]hen all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims.'" Clorofilla v. Town of New Castle, 106 F. App'x 90, 92 (2d Cir. 2004) (quoting Baylis v. Marriott Corp., 843 F.2d 658, 665 (2d Cir. 1988)). However, in situations like this, "[w]here the state claims originally reached the federal forum by removal from a state court, the district court has the discretion to dismiss the claims without

12

prejudice or remand them to the state court." Baylis, 106 F. App'x at 665 (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)). Accordingly, the state law claims against SCNB are REMANDED to the New York State Supreme Court, Suffolk County. See Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield, --- F. Supp. 2d ----, 2014 WL 1057332, at *14 (E.D.N.Y. Mar. 19, 2014). Plaintiffs' motion to remand the state law claims, which seeks remand on different grounds, is therefore DENIED AS MOOT.

## CONCLUSION

For the foregoing reasons, SCNB's motion to dismiss (Docket Entry 9) is GRANTED insofar as it seeks dismissal of Plaintiffs' TILA claim and this claim is DISMISSED WITH PREJUDICE. Plaintiffs' remaining state law claims are REMANDED to the Supreme Court of the State of New York, County of Suffolk. Plaintiffs' motion to remand the state law claims (Docket Entry 3), which seeks remand on different grounds than those stated herein, is DENIED AS MOOT. The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September __30__, 2014
        Central Islip, NY